NO. COA14-458

 NORTH CAROLINA COURT OF APPEALS

 Filed: 4 November 2014

STATE OF NORTH CAROLINA

 v. Alamance County
 Nos. 11CRS054104-06
DERICK JOHNELLE MILES,
 Defendant.

 Appeal by defendant from judgments entered on or about 7

June 2013 by Judge Thomas H. Lock in Superior Court, Alamance

County. Heard in the Court of Appeals 25 September 2014.

 Attorney General Roy A. Cooper, III by Assistant Attorney
 General Anne M. Middleton, for the State.

 Glover & Petersen, P.A. by James R. Glover, for defendant-
 appellant.

 STROUD, Judge.

 Derick Johnelle Miles (“defendant”) appeals from a

conviction for an attempted second-degree sexual offense.

Defendant contends that insufficient evidence supports his

conviction. We find no error.

 I. Background

 In 2010, M.G. met defendant while working at a car wash.

M.G. and defendant talked on the phone and went on one date. In
 -2-
2010, they had sexual relations twice. After hearing a rumor

about defendant, M.G. ended their relationship.

 In early 2011, M.G. and her daughter moved to an apartment

in Mebane. In February 2011, while picking up her daughter from

day care, M.G. saw defendant. They agreed to meet again.

Defendant wanted a romantic relationship, but M.G. wanted a

friendship only. Between February and May 2011, defendant and

M.G. had sexual relations five times. In May 2011, after

defendant threatened M.G., M.G. ended their relationship and

attempted to cut off contact with defendant. In response,

defendant called M.G.’s phone numerous times, knocked on M.G.’s

door for an hour, attempted to evict M.G., and threatened to

damage M.G.’s car. M.G. sometimes answered his phone calls and

told him that she did not want a relationship.

 Sometime after 8:00 p.m. on 3 July 2011, while M.G. was

cleaning her apartment, she heard a knock on her door. M.G.

looked through her peephole and saw one of her neighbors. She

did not see anyone else, so she opened the door. After she

opened it, defendant appeared, ran into her apartment, slammed

the door behind him, and took his clothes off. Defendant had

asked M.G’s neighbor to knock on her door, so that defendant

could “surprise” her. M.G. attempted to run toward the back of
 -3-
the apartment, but defendant grabbed her by her shoulder.

Defendant threw M.G. on the couch, and M.G. cried, screamed, and

yelled. M.G. tried to fight off defendant, but defendant

overpowered her. Defendant took M.G’s clothes off and raped

her. M.G. tried to escape through the front door, but defendant

grabbed M.G. by her hair, ripping out some of her hair

extensions, and pulled her back into the apartment. Defendant

then choked M.G. with his hand, impeding M.G.’s ability to

breathe. Defendant flipped M.G. upside down, yelled at her,

grabbed a screwdriver, and jabbed it at her in a threatening

manner. M.G. told defendant that she needed to pick up her

daughter. Defendant demanded that M.G. first drive him to his

apartment in Burlington.

 After M.G. drove defendant to his apartment, defendant

grabbed her car keys. Defendant grabbed M.G. by her waist and

dragged her out of her car and into his apartment. Defendant

yelled and slapped M.G.’s face so hard that her braces cut the

inside of her mouth. Defendant then acted as if he would let

her leave and allowed her to go back to her car. But then

defendant grabbed her and dragged her back into his apartment.

Defendant grabbed a pointed kitchen knife and tried to hand it

to M.G. He told her that she would escape only if she used it
 -4-
against him. She refused to take it. Defendant then asked her

to perform fellatio and showed her his penis. M.G. begged him

to not make her do it. Defendant then took M.G.’s clothes off

and attempted to perform anal intercourse on her. After M.G.

screamed and jumped in pain, defendant turned M.G. over and

raped her. After unsuccessfully trying to fight off defendant,

M.G. decided to feign love for defendant in order to get him to

stop his abuse. Defendant gave M.G. some of his clothes and let

her leave around 1:00 a.m.

 On or about 13 February 2012, a grand jury indicted

defendant for two counts of first-degree rape, two counts of

first-degree kidnapping, first-degree burglary, assault by

strangulation, a first-degree sexual offense, and an attempted

first-degree sexual offense. At the conclusion of all the

evidence at trial, defendant moved to dismiss all the charges.

The trial court denied the motion. On or about 7 June 2013, a

jury found defendant guilty of second-degree rape, non-felonious

breaking or entering, and two counts of attempted second-degree

sexual offense and not guilty of all other charges. One of the

attempted second-degree sexual offense convictions arose from

defendant’s request for fellatio. The trial court sentenced

defendant to 146 to 236 months’ imprisonment for second-degree
 -5-
rape, 128 to 214 months’ imprisonment for an attempted second-

degree sexual offense, and 128 to 214 months’ imprisonment for

an attempted second-degree sexual offense and non-felonious

breaking or entering. The sentences were to be served

consecutively. Defendant gave notice of appeal in open court.

 II. Motion to Dismiss

A. Standard of Review

 When reviewing a defendant’s motion to
 dismiss a charge on the basis of
 insufficiency of the evidence, this Court
 determines whether the State presented
 substantial evidence in support of each
 element of the charged offense. Substantial
 evidence is relevant evidence that a
 reasonable person might accept as adequate,
 or would consider necessary to support a
 particular conclusion. In this
 determination, all evidence is considered in
 the light most favorable to the State, and
 the State receives the benefit of every
 reasonable inference supported by that
 evidence. The defendant’s evidence, unless
 favorable to the State, is not to be taken
 into consideration, except when it is
 consistent with the State’s evidence, the
 defendant’s evidence may be used to explain
 or clarify that offered by the State.
 Additionally, a substantial evidence inquiry
 examines the sufficiency of the evidence
 presented but not its weight, which is a
 matter for the jury. Thus, if there is
 substantial evidence—whether direct,
 circumstantial, or both—to support a finding
 that the offense charged has been committed
 and that the defendant committed it, the
 case is for the jury and the motion to
 dismiss should be denied.
 -6-

State v. Hunt, 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012).

B. Analysis

 Defendant contends that the trial court erred in denying

his motion to dismiss the attempted second-degree sexual offense

charge arising from defendant’s request for fellatio. A person

is guilty of this offense if the person engages in a sexual act

with another person by force and against the will of the other

person. N.C. Gen. Stat. § 14-27.5(a)(1) (2011). Fellatio is a

sexual act within the meaning of the statute. State v. Jacobs,

128 N.C. App. 559, 563, 495 S.E.2d 757, 760, disc. rev. denied,

348 N.C. 506, 510 S.E.2d 665 (1998). The force required need not

be physical force; fear, fright, or coercion may take the place

of force. Id., 495 S.E.2d at 760. “Fear of serious bodily harm

reasonably engendered by threats or other actions of a defendant

and which causes the victim to consent to the sexual act takes

the place of force and negates the consent.” State v. Locklear,

304 N.C. 534, 540, 284 S.E.2d 500, 503 (1981).

 The elements of an attempt to commit any crime are: (1)

the intent to commit the substantive offense, and (2) an overt

act done for that purpose which goes beyond mere preparation,

but (3) falls short of the completed offense. State v.

Henderson, 182 N.C. App. 406, 412, 642 S.E.2d 509, 513 (2007).
 -7-
“[W]henever the design of a person to commit a crime is clearly

shown, slight acts in furtherance of the design will constitute

an attempt.” Id. at 413, 642 S.E.2d at 514.

 Defendant contends that requesting a sexual act from an

adult cannot constitute an attempted sexual offense, because

such a request does not show an intention to commit a sexual act

“[b]y force and against the will of the other person.” See N.C.

Gen. Stat. § 14-27.5(a)(1). In this way, this case differs from

cases involving attempted statutory sex offenses where a

defendant requests a sexual act from a victim who legally cannot

give consent. See, e.g., State v. Sines, 158 N.C. App. 79, 579

S.E.2d 895, cert. denied, 357 N.C. 468, 587 S.E.2d 69 (2003);

Henderson, 182 N.C. App. 406, 642 S.E.2d 509. Defendant is

correct that requesting fellatio from an adult who is legally

capable of consent in a non-threatening manner generally would

not constitute an attempted sexual offense. But where the

request for fellatio is immediately preceded by defendant

tricking the victim into letting him into her apartment, raping

her, pulling her hair, choking her, flipping her upside down,

jabbing at her with a screwdriver, refusing to allow her to

leave, pulling her out of her car, taking her car keys, dragging

her to his apartment, slapping her so hard that her braces cut
 -8-
the inside of her mouth, screaming at her, and immediately after

her denial of his request, raping her again, we hold that this

request is accompanied by a threat and a show of force and thus

amounts to an attempt. Had M.G. complied with defendant’s

request, thus completing the sexual act, we cannot imagine that

the jury would have found that she had consented to perform

fellatio. Given the violent, threatening context, defendant’s

request and presentation of his penis to M.G. amounted to an

attempt to engage M.G. in a sexual act by force and against her

will. See N.C. Gen. Stat. § 14-27.5(a)(1); Jacobs, 128 N.C. App.

at 563, 495 S.E.2d at 760; Locklear, 304 N.C. at 540, 284 S.E.2d

at 503. We thus hold that sufficient evidence supports

defendant’s conviction for an attempted second-degree sexual

offense arising from defendant’s request for fellatio.

 III. Conclusion

 Because sufficient evidence supports defendant’s conviction

for an attempted second-degree sexual offense, we hold that the

trial court committed no error.

 NO ERROR.

 Chief Judge MCGEE and Judge GEER concur.